```
                                         ┌─────────────────────────┐
                                         │ USDC SDNY               │
                                         │    ... MENT             │
                                         │ ELECTRONIC...       D   │
UNITED STATES DISTRICT COURT             │ DOC #:                  │
SOUTHERN DISTRICT OF NEW YORK            │ DATE FILED: 8/8/1?      │
- - - - - - - - - - - - - - - - -x       └─────────────────────────┘
DARRYL HARRIS,                       :

              Petitioner,            :      REPORT AND RECOMMENDATION

         -against-                   :      11 Civ. 3019 (RA)(MHD)

WILLIAM HULIHAN, SUPT.,              :

              Respondent.            :
- - - - - - - - - - - - - - - - -x
```

TO THE HONORABLE RONNIE ABRAMS, U.S.D.J.:


Pro se petitioner Darryl Harris seeks a writ of habeas corpus under 28 U.S.C. § 2254 to challenge his conviction entered on August 19, 2009, upon a plea of guilty, in the New York State Supreme Court, New York County, on one count of Robbery in the Third Degree. The court adjudicated Harris a second-felony offender and sentenced him to a prison term of three and one-half to seven years.


Petitioner advances four grounds in support of his request for relief. First, he argues that he received ineffective assistance of counsel. Second, he asserts that his guilty plea was involuntary. Third, he contends that the evidence before the grand jury was false and was an insufficient basis for his conviction. Fourth, petitioner argues that the three-and-one-half to seven-year prison

1

sentence constitutes cruel and unusual punishment. (Pet. 5A).

For the reasons set forth below, we conclude that all of petitioner's claims are without merit, and we therefore recommend that the writ be denied and the petition dismissed with prejudice.

PRIOR PROCEEDINGS

I. The Robbery, Grand Jury Proceedings and Plea Bargaining

Petitioner's arrest and conviction stemmed from his stealing property from a woman on April 24, 2009, near 125th Street between St. Nicholas Avenue and Frederick Douglass Boulevard. (See Gill Decl. Ex. I (Pet'r's App. Div. Pro Se Supplemental Br. ("Supp. Br.") at 10). According to the State, petitioner forcibly stole money from the victim's pocket, and injured her finger as she struggled to stop him. (See id. Ex. B (People's Resp. to Def.'s Mot. To Vacate J. ("People's Resp.")) at 5). Petitioner insists that he never touched the victim, that her money was seventy percent out of her pocket when he took it, and that when a person in the crowd -- whom he refers to as "the good samaritan" -- grabbed petitioner, he did not fight back or attempt to flee. (See

2

Supp. Br. at 6-7; see also Gill Decl. Ex. A (Pet'r's Aug. 18, 2009 Aff. in Supp. of Mot. to Vacate ("Vacate Aff.")) at 6).

Petitioner was charged with Robbery in the Second and Third Degrees. The prosecution scheduled grand jury action for April 30, 2009, and on that date Harris's attorney withdrew his previously filed cross grand jury notice[1] because the prosecutor was considering making a plea offer. (People's Resp. ¶ 4). The facts of that plea offer are in dispute. Petitioner asserts that he was advised by his counsel that he could waive his right to testify before the grand jury and then "take a quick plea to Robbery, third degree (a non-violent crime), in exchange for a sentence of 2 to 4 years," as compared to the twelve years to life that he faced if he testified before the grand jury and was indicted on second-degree robbery. (Vacate Aff. at 1-2). The State contends that it only indicated that it would "consider" a plea offer of Robbery in the Third Degree and that "[a]t no time, did the People indicate that

---

[1] New York Criminal Procedure Law § 190.50(5) guarantees an individual's right to appear as a witness before a grand jury considering charges against him or her: "When a criminal charge against a person is being or is about to be or has been submitted to a grand jury, such person has a right to appear before such grand jury as a witness in his own behalf if, prior to the filing of any indictment or any direction to file a prosecutor's information in the matter, he serves upon the district attorney of the county a written notice making such request." This request is often referred to as a "cross grand jury notice."

3

the offer would be the minimum sentence of two to four years of incarceration." (People's Resp. ¶ 4).

On May 27, 2009, petitioner appeared before the Hon. Richard D. Carruthers, S.C.J., for arraignment. (Id. ¶ 5). Petitioner requested that the court appoint new counsel because his Legal Aid attorney had allegedly failed to inform the court of the April 30, 2009 conversation with the prosecution regarding a guilty plea. (Vacate Aff. at 2; see also People's Resp. ¶ 5). The court relieved defendant's appointed attorney and assigned Joseph Heinzmann, Esq., who was present in the court that day, to represent petitioner. (People's Resp. ¶ 5). The case was then adjourned to July 22, 2009. (Id.).

On July 22, the prosecution offered petitioner a sentence of three and one-half to seven years incarceration in exchange for a plea to one count of third-degree robbery. (Id. at ¶ 7). Petitioner initially rejected the offer, and the case was adjourned to August 19, 2009, for the court's decision on any motions. (Id.). On July 24, 2009, petitioner's attorney informed the prosecutor that Harris agreed to the offer and would plead guilty to Robbery in the Third Degree. (Id. ¶ 8).

4

II.   <u>Guilty Plea Proceeding</u>

On August 3, 2009, petitioner appeared before Justice
Carruthers for his plea. (Pet'r's Plea & Sentencing Mins., August
3, 2009 Tr. ("Plea Mins.")). During the proceeding, Harris withdrew
his previously entered plea of "not guilty" and entered a plea of
"guilty" to third-degree robbery, and the prosecution moved to
dismiss the top count of Robbery in the Second Degree. (<u>Id.</u> at 2-3,
9). Justice Carruthers determined that petitioner understood the
sentence that he would face based on his guilty plea and that he
was waiving his right to a trial. (<u>Id.</u> at 3-5). He further
confirmed that Harris had not been threatened or coerced to plead
guilty, and that he had had a full opportunity to discuss his plea
and its consequences with his attorney and had in fact done so.
(<u>Id.</u> at 4, 6). Petitioner represented that he was satisfied with
his appointed counsel. (<u>Id.</u> at 6). As part of his allocution,
Harris also confirmed that he was aware that he was waiving his
right to appeal. Initially, he indicated that he was confused on
this point, but after conferring with his attorney, he stated that
he understood, and he then signed the waiver of appeal. (<u>Id.</u> at 8).
Petitioner, upon pleading guilty, further admitted to having been
convicted of a violent felony -- burglary in the first degree -- in
1991 and thus was adjudicated a second-felony offender by the

court. The case was adjourned to August 19, 2009 for sentencing. (Id. at 10).

The Honorable Marcy L. Kahn, S.C.J., presided at petitioner's sentencing. (Pet'r's Plea & Sentencing Mins., Aug. 19, 2009 Tr. ("Sent. Mins.")). Based on the fact that Harris had been adjudicated a second-felony offender, Justice Kahn sentenced him to a prison term of three and one-half to seven years, in accordance with the plea agreement. (Id. at 3).

III. Motion to Vacate Judgment

Petitioner filed a pro se motion dated August 19, 2009 -- the same day as his sentencing -- to vacate the judgment pursuant to N.Y. Crim. Proc. Law § 440.10. In support of that application, he asserted (i) that he had received ineffective assistance of counsel, (ii) that the evidence presented in the grand jury was insufficient to support the charges, (iii) that he had been coerced by his counsel into pleading guilty, and (iv) that his sentence constituted cruel and unusual punishment. (See Vacate Aff. at 3-9).

In petitioner's affidavit in support of his motion he asserted that he had been prepared to testify to a grand jury on April 30,

6

2009 that he had taken the victim's money "without touching anybody and without using any force because he did not try to flee." (Id. at 1). According to petitioner, he had committed a "jostling"[2] rather than a robbery because he had not used force. (Id.). As petitioner recounted the matter, he did not appear before the grand jury because his first trial attorney advised him that he should waive his right to testify and instead consider the prosecution's offer to plead to third-degree robbery in exchange for a prison sentence "closer to two to four [years] than to the maximum [term]." (Id. at 1-2). According to petitioner, his counsel also warned him that, based on his prior criminal record, he could be sentenced to a prison term of twelve or sixteen years to life if he were to be convicted of second-degree robbery after testifying before the grand jury. (Id. at 2, 5). Petitioner asserted that, based on this conversation, he accepted the plea offer. (Id. at 7).

In Harris's motion, he stated that he had not in fact committed a robbery, that there was insufficient evidence before the grand jury to support the robbery charge and that his attorney

---

[2] "Jostling" is a misdemeanor. A person is guilty of jostling when he "1. Places his hand in the proximity of a person's pocket or handbag; or 2. Jostles or crowds another person at a time when a third person's hand is in the proximity of such person's pocket or handbag." N.Y. Penal Law § 165.25.

had been ineffective for not investigating the incident leading to his arrest. (See Vacate Aff. at 6). He asserted that the evidence leading to his indictment "was false and was, prior to the entry of the judgment, known by the prosecutor to be false," though he alleged no facts in support of this assertion. (Id. at 8). In petitioner's version of events, a "good samaritan grabbed [him] immediately following the jostling and . . . [he] did not struggle or try to flee." (Id. at 6). Petitioner also maintained that he had returned the money that he had stolen from the victim because she had said that she would not press charges if he gave back the money. (Id. at 3). According to petitioner, "a young[,] over-zealous police officer" named Officer Walton, who was at the scene of the crime, stated that he would "sweet-talk the [victim] into pressing charges anyways." (Id.).

In further criticism of his attorney, petitioner reported that he had expressed an interest in entering a residential rehabilitation facility for his drug addiction as an alternative to a prison sentence. (Id.). We understand petitioner to have been arguing, as part of his claim for ineffective assistance of counsel, that his counsel did not adequately represent this

8

interest.[3] According to petitioner, despite having "pled with counsel to work[]on getting him into a long-term residential drug treatment program," counsel never followed up on the request and told petitioner to "'forget about a program, no judge is going to give you a program with violence in your record.'" (Id. at 3-4). Petitioner attached to his motion three reference letters[4] and six letters or other papers indicating acceptance to drug programs despite his past record of violent crimes. (Id. at 4 & attach. Ex. B).

As part of his Sixth Amendment claim, petitioner also complained that his attorney had "not respond[ed] to any of the four (4) letters the defendant sent him", and he attached these letters as an exhibit to the motion. (Id. at 6 & attach Ex. F). Petitioner further stated that "[f]rom May 27 thru July 22, 2009, counsel did not file an Omnibus or any motion." (Id. at 6). In addition to not investigating the events leading up to his arrest, petitioner alleged that his counsel had also failed to challenge

---

[3] When the moving party is proceeding on a pro se basis, the court must read that party's papers liberally and interpret them "to raise the strongest arguments that they suggest." McPherson v. Coombe, 174 F.3d 276, 280 (2d Cir. 1999) (quoting Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994)).

[4] The reference letters are from his pastor, his sister and his then-fiancée. (Vacate Aff. at 4).

the sufficiency of the evidence that was before the grand jury. (<u>Id.</u> at 7).

In support of petitioner's allegation that his plea had been obtained by coercion, he stated that his initial decision to plead, that "got [him] to waive [his] right to testify before the grand jury," had been based on his understanding that the sentence would be two to four years. (<u>Id.</u> at 5). According to petitioner, his attorney had stated to him, "'you will lose if you go to trial and get 16 years to life'", and this threat, petitioner claimed, ultimately led to his acceptance of the plea offer. (<u>Id.</u> at 5, 7). In addition, petitioner averred that he was lied to because he did not injure the victim during the jostling, but the prosecution nonetheless stated on April 30, 2009 that the victim was present in the courtroom and prepared to testify before the grand jury with a finger that was "still very swollen five days after the crime." (<u>Id.</u> at 6).

In opposing the 440.10 motion, the prosecutor denied that the State had made any offer of a prison term of two to four years. (People's Resp. ¶ 4). According to the prosecutor, the only representation made to petitioner's attorney on April 30, 2009 was

that the State would consider a plea deal based on a plea of third-degree robbery. (Id.).

By order dated November 18, 2009, Justice Carruthers denied petitioner's motion. (Gill Decl. Ex. D (Order Den. Mot. Vacate J.)). The court found that petitioner had failed to provide any support for his factual allegations, and had failed to state a claim upon which relief could be granted. (Id. at 2).

On November 30, 2009, petitioner sought leave to appeal the denial to the First Department, citing the same grounds as he had raised in his motion to vacate. (See Gill Decl. Ex. E (Pet'r's App. for Leave to Appeal ("Leave Appeal"))). The prosecution opposed (see id. Ex. F (Resp't's Opp'n to App. for Leave to Appeal ("Leave Opp'n")) at 1), and on March 30, 2010, the Appellate Division denied the leave application. (See id. Ex. G (Certificate Den. Leave)).

IV. Direct Appeal

Petitioner also pursued a direct appeal of his conviction. However, his appointed Legal Aid counsel filed a brief with the Appellate Division, pursuant to Anders v. California, 386 U.S. 738

(1967), requesting permission to withdraw as counsel because he believed that there were no non-frivolous issues to be raised on appeal. (See Gill Decl. Ex. H (Pet'r's Counsel's Anders Br. ("Anders Br.")) at 7). Counsel stated that Harris had "willingly entered into [the] negotiated plea agreement and was fully informed of the rights he was waiving by pleading guilty, indicating a knowing and voluntary plea." (Id. at 7). He noted that the record of the agreement specifically revealed that, "[a]fter consulting with counsel, Mr. Harris waived his right to appeal, both orally and in writing." (Id.). In addition, counsel stated that petitioner had also waived any claim that his sentence was excessive by waiving his right to appeal, and that his claim of ineffective assistance of counsel could not be reviewed on direct appeal because there was no evidence in the record of ineffectiveness of counsel regarding the voluntariness of petitioner's plea. (Id. at 8). The prosecution filed a letter stating that it took no position on the motion to be relieved. (See Gill Decl. Ex. J (People's Letter Dated July 20, 2010)).

Petitioner then filed, pro se, a supplemental brief asserting the same claims as he had raised in his motion to vacate judgment. (See Supp. Br. at i). In a January 27, 2011 decision, the Appellate Division unanimously affirmed petitioner's conviction and indicated

12

that it had "considered and reject[ed] appellant's pro se claims."
See People v. Harris, 80 A.D.3d 533, 533-34, 914 N.Y.S.2d 894, 894
(1st Dep't 2011). The court also granted defense counsel's motion
to be relieved from the case, agreeing that there were "no non-
frivolous points which could be raised on this appeal." Id. at 533-
34, 914 N.Y.S.2d at 894.

Petitioner filed for leave to appeal to the Court of Appeals
of New York and on April 21, 2011, that court denied the
application. See People v. Harris, 16 N.Y.3d 859, 859, 923 N.Y.S.2d
421, 421 (2011).

V.    The Current Petition

On April 25, 2011, petitioner filed the current petition in
this court. He asserts the same claims as he raised in his direct
appeal. (See Pet. 5A). Specifically, he bases his petition on two
grounds, which contain four different claims. First, he asserts
that he received ineffective assistance of counsel. Second, he
claims that his guilty plea was involuntary. Third, he contends
that the evidence before the grand jury was false and was an
insufficient basis for his conviction. Lastly, petitioner argues
that the three-and-one-half to seven-year prison sentence

13

constitutes cruel and unusual punishment. (Pet. 5A; see also Pet'r's Reply Br. at 4-8).

ANALYSIS

As an initial matter, we note that in assessing Harris's petition, he is proceeding as a pro se litigant, and, as such, we construe his claims broadly. See Graham v. Henderson, 89 F.3d 75, 79 (2d Cir. 1996). Thus, we read his supporting papers liberally, and will interpret them "to raise the strongest arguments that they suggest." Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam) (citations omitted). We nonetheless conclude that his claims are meritless. Before addressing them, we first summarize the scope of federal habeas review of the challenged state-court rulings.

## I. Standard of Review

The stringency of federal habeas review turns on whether the state courts have passed on the merits of a petitioner's claim -- that is, whether the decision of the highest state court to consider the claim is "based on the substance of the claim advanced, rather than on a procedural, or other, ground." Sellan v.

14

Kuhlman, 261 F.3d 303, 311 (2d Cir. 2001) (discussing 28 U.S.C. §

2254(d)). If the state court has addressed the merits, a petitioner

may obtain relief only if the state court's ruling either

> (1) resulted in a decision that was contrary to, or
> involved an unreasonable application of, clearly
> established Federal Law, as determined by the Supreme
> Court of the United States; or

> (2) resulted in a decision that was based on an
> unreasonable determination of the facts in light of the
> evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). See, e.g., Bell v. Cone, 535 U.S. 685, 693-94

(2002); Williams v. Taylor, 529 U.S. 362, 412-13 (2000) (O'Connor,

J., concurring); Howard v. Walker, 406 F.3d 114, 121-22 (2d Cir.

2005); Brown v. Artuz, 283 F.3d 492, 498 (2d Cir. 2002).


"Clearly established federal law 'refers to the holdings, as

opposed to the dicta, of the Supreme Court's decisions as of the

time of the relevant state-court decision.'" Howard, 406 F.3d at

122 (quoting Kennaugh v. Miller, 289 F.3d 36, 42 (2d Cir. 2002)).

"[A] decision is 'contrary to' clearly established federal law 'if

the state court arrives at a conclusion opposite to that reached by

[the Supreme] Court on a question of law or if the state court

decided a case differently than [the Supreme] Court has on a set of

15

materially indistinguishable facts.'" Id. at 122 (quoting Williams, 529 U.S. at 413).


What constitutes an "unreasonable application" of settled law is a somewhat murkier proposition. "A federal court may not grant habeas simply because, in its independent judgment, the 'relevant state-court decision applied clearly established federal law erroneously or incorrectly.'" Id. (quoting Fuller v. Gorczyk, 273 F.3d 212, 219 (2d Cir. 2001) (quoting Williams, 529 U.S. at 411)). The Supreme Court observed in Williams that "unreasonable" did not mean "incorrect" or "erroneous," id. at 410-11, noting that a writ could issue under the "unreasonable application" provision only "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions [and] unreasonably applies that principle to the facts of the prisoner's case." Id. at 413. As implied by this language, "[s]ome increment of incorrectness beyond error is required . . . [H]owever, . . . the increment need not be great; otherwise habeas relief would be limited to state court decisions 'so far off the mark as to suggest judicial incompetence.'" Monroe v. Kuhlman, 433 F.3d 236, 246 (2d Cir. 2006) (quoting Francis S. v. Stone, 221 F.3d 100, 111 (2d Cir. 2000)); accord Richard S. v. Carpinello, 589 F.3d 75, 80 (2d Cir. 2009).

Under the Supreme Court's most recent, and arguably more stringent, interpretation of the statutory language, "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter, 131 S.Ct. 770, 786 (2011) (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)). "Under § 2254(d), a habeas court must determine what arguments or theories supported or . . . could have supported [] the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." Id. Under this more recent interpretation, a federal habeas court has "authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme Court's] precedents." Id. In other words, to demonstrate an 'unreasonable' application of Supreme Court law, the habeas petitioner "must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Id. at 786-87.

17

As for the state courts' factual findings, under the habeas statute "a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); McKinney v. Artuz, 326 F.3d 87, 101 (2d Cir. 2003). See generally Rice v. Collins, 546 U.S. 333, 338-39 (2006).


## II. The Merits of Petitioner's Claims

Harris's petition states his claims in conclusory terms and does not provide evidentiary detail. (Pet. 5A). His reply in response to respondent's opposition offers more comprehensive arguments, however, and it also refers the court to petitioner's pro se supplemental brief filed in the Appellate Division. Accordingly, we look to Harris's petition and reply but also to his more detailed pro se state appellate brief for a fuller statement of his arguments.


### A.   Ineffective Assistance of Counsel

Petitioner first complains that he was denied the effective

18

assistance of trial counsel. (Pet. 5A; Pet'r's Reply Br. at 4). In his pro se Appellate Division brief he specified that counsel had: (a) failed to advocate to have petitioner placed in a drug-treatment plan; (b) failed to properly investigate the case and have a witness interviewed; (c) failed to file an omnibus motion; and (d) warned petitioner that he would lose at trial. (See Supp. Br. at 2-12).

As noted, the Appellate Division rejected petitioner's ineffective-assistance claim when it agreed with Harris's assigned counsel that there were no non-frivolous points to be raised on appeal and stated, "We have considered and rejected appellant's pro se claims." Harris, 80 A.D.3d at 534, 914 N.Y.S.2d at 894. The highest state court to consider petitioner's claims therefore rejected this claim of ineffective assistance of counsel on the merits, and thus we review it under the deferential AEDPA standard of review.

### 1. Legal Standard

The Supreme Court has established a two-part test for evaluating claims of ineffective counsel: (1) counsel's performance must be shown to have been deficient, and (2) that deficiency must

be shown to have prejudiced the defendant. See Strickland v. Washington, 466 U.S. 668, 687 (1984); Lafler v. Cooper, 132 S.Ct. 1376, 1384 (2012) (citing Strickland, 466 U.S. at 687). The performance prong requires that a defendant show "that counsel's representation fell below an objective standard of reasonableness" and committed "errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Harrington, 131 S.Ct. at 787-88 (quoting Strickland, 466 U.S. at 687). To satisfy the second prong, a defendant must establish that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Lafler, 132 S.Ct. at 1384 (quoting Strickland, 466 U.S. at 694).

The Court further held in Hill v. Lockhart that "the two-part [Strickland] test applies to challenges to guilty pleas based on ineffective assistance of counsel." 474 U.S. 52, 58 (1985). In evaluating petitioner's claim that ineffective assistance "led to the improvident acceptance of a guilty plea", the defendant must show not only deficiency of performance by the attorney, but also "'that there is a reasonable probability that, but for counsel's errors, [the defendant] would not have pleaded guilty and would have insisted on going to trial.'" Lafler, 132 S.Ct. at 1384-85

(quoting Hill, 474 U.S. at 59).

It bears emphasis that the Strickland standard is quite deferential, and that a claim of constitutional dimension does not arise unless a lawyer's error is so egregious as to amount to a failure to provide minimal professional representation. Thus, the court weighing an ineffective-assistance claim "must judge the reasonableness of counsel's challenged conduct," and must "determine whether, in light of all of the circumstances, [counsel's] identified acts or omissions were outside the wide range of professionally competent assistance." Strickland, 466 U.S. at 690; accord, e.g., Jameson v. Coughlin, 22 F.3d 427, 429 (2d Cir. 1994). In making this determination, "[e]ven under de novo review, the standard for judging counsel's representation is a most deferential one", and courts must resist the temptation to "second-guess counsel's assistance after conviction or adverse sentence." Harrington, 131 S.Ct. at 788 (citing Strickland, 466 U.S. at 689). Our review is still more constrained in view of the limitations imposed on the habeas court by 28 U.S.C. § 2254(d). See e.g., Williams, 529 U.S. at 375-76.

Under this standard, counsel's tactical decisions, even those that go awry, will not ordinarily provide the factual predicate for

a Sixth Amendment claim. See, e.g., United States v. Eisen, 974 F.2d 246, 265 (2d Cir. 1992); United States v. Nersesian, 824 F.2d 1294, 1320-21 (2d Cir. 1987); United States v. Cruz, 785 F.2d 399, 404-07 (2d Cir. 1986). Moreover, attorney error, whether through "ignorance or inadvertence", does not by itself constitute a Sixth Amendment violation. See, e.g., Coleman v. Thompson, 501 U.S. 722, 755 (1991); Marone v. United States, 10 F.3d 65, 67 (2d Cir. 1993) (per curiam).

The burden of proving prejudice is equally onerous. As noted, a petitioner must demonstrate a "reasonable probability" that, but for counsel's unprofessional errors, the result of the proceeding would have been different. "A reasonable probability is one sufficient to undermine confidence in the outcome of the trial or appeal." Aparicio v. Artuz, 269 F.3d 78, 95 (2d Cir. 2001) (citing Strickland, 466 U.S. at 694).

In assessing a challenge to an attorney's advice to accept a guilty plea, it is necessary that we focus on counsel's performance in the plea-bargaining process. See, e.g., Lafler, 132 S.Ct. at 1384. As for the prejudice component, "[i]n the context of pleas a defendant must show [that] the outcome of the plea process would have been different with competent advice." Id. In particular,

22

where a defendant complains that ineffective assistance led him to accept a plea offer rather than proceeding to trial, "the defendant will have to show 'a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'" Missouri v. Frye, 132 S.Ct. 1399, 1409 (2012) (quoting Hill, 474 U.S. at 59).

The prejudice prong hinges on a defendant's decision to enter a guilty plea because the Supreme Court has observed that a knowing and voluntary plea "represents a break in the chain of events which has preceded it." Tollett v. Henderson, 411 U.S. 258, 267 (1973). As a result, the defendant "may only attack the voluntary and intelligent character of the guilty plea." Id. 411 U.S at 267. Furthermore, the Supreme Court has acknowledged that "[p]lea bargains are the result of complex negotiations suffused with uncertainty", which require defense attorneys to "make careful strategic choices in balancing opportunities and risks." Premo v. Moore, 131 S.Ct. 733, 741 (2011). The opportunities might include pleading to a lesser charge and obtaining a more favorable sentence compared with what could be the outcome at trial, and the risks include losing the chance for a defense verdict or entering an early plea before the prosecution discovers that its case is getting weaker. Id. Accordingly, "[d]eference to the state court's

prejudice determination is all the more significant in light of the uncertainty inherent in plea negotiations." Id. at 743. In Premo, this meant that "[a] defendant who accepts a plea bargain on counsel's advice does not necessarily suffer prejudice when his counsel fails to seek suppression of evidence, even if it would be reversible error for the court to admit that evidence." Id. at 744. Thus, it can be reasonable for a state court to determine that a defendant would have accepted the guilty plea even if there were in fact deficiencies in counsel's performance.

For the reasons that follow, we find that petitioner has failed to satisfy the standard for either prong of the Strickland test.

### 2. The Merits of Petitioner's Claims

Petitioner fails to show that his counsel's representation fell below accepted standards of competent assistance or that he was prejudiced as a result, and thus the Appellate Division's rejection of the claim was not contrary to, or an unreasonable application of, settled Supreme Court precedent.

24

i. Counsel's Failure to Ensure Petitioner's
Placement in a Drug Treatment Program

Petitioner complained in his 440.10 motion that his counsel
had failed to argue for his placement in a drug rehabilitation
diversion program in lieu of a jail sentence, and he insisted that
he had been eligible for such a program. (Vacate Aff. at 4-5).
Specifically, Harris claimed that he was "a prime candidate for the
'Judicial Diversion Program for Certain Felony Offenders.'" (Id. at
5). He is referring to a statewide statutory program, instituted
pursuant to New York Criminal Procedure Law Article 216.00, for
diverting certain felony offenders from the ordinary processing of
criminal actions for treatment for substance or alcohol abuse or
dependence. See N.Y. Crim Proc. Law § 216.05.

Although petitioner claims that he was admitted into six drug
rehabilitation programs (see Vacate Aff. at 4), there is a distinct
standard for entry into the Judicial Diversion Program, and Harris
was not eligible for that program because of his criminal
background. A defendant is not an "eligible defendant" if, within
the preceding ten years -- excluding time spent in prison between
the time of commission of the previous felony and that of the
present felony -- he has been convicted of a violent felony

25

offense. See N.Y. Crim Proc. Law § 216.00(1)(a).

Petitioner admitted at his plea allocution that he has been convicted of a violent felony offense within the preceding ten years, as defined by the statute. (See Plea Mins. at 9). Specifically, he confirmed that on December 11, 1991, he had pled guilty to Burglary in the First Degree, which is a violent felony offense as defined by Penal Law § 70.02(1). (Id.); see also N.Y. Penal Law § 70.02 (1)(a). In 1991 Harris was convicted of two additional felony offenses after a bench trial. (See People's Resp. ¶ 15, n.1; see also Parole Bd. Release Decision Notice; Supp. Br. at 25). He was incarcerated from January 6, 1992 to January 3, 2005, from August 25, 2006 to February 20, 2007, and from October 1, 2007 to June 18, 2008. (Plea Mins. at 9-10). Thus, Harris's 1991 conviction was within the previous ten years when his prison time is excluded, and he was precluded from eligibility for the Judicial Diversion Program. While the program will accept an ineligible defendant if the prosecutor gives consent, see N.Y. Penal Law § 216.00 (1)(b), the prosecutor represented that the State would not have consented to Harris's entry into the program. (See People's Resp. ¶ 19). Defense counsel was therefore correct in advising petitioner that he did not qualify for a drug treatment program. (Vacate Aff. at 6).

In light of petitioner's ineligibility for the Judicial Diversion Program, even if petitioner's counsel had advocated for placement in the program the result would have been the same because petitioner would have been denied admission into the program. See N.Y. Crim. Proc. Law § 216.00(1)(a). Accordingly, petitioner has failed to show that he was prejudiced in any way by counsel's failure to press for his placement in a drug rehabilitation program.

## ii. Counsel's Failure to Investigate

Without indicating to which of his attorneys his claim refers, petitioner argues that his counsel did not sufficiently investigate the evidence leading up to his arrest by not inquiring further about the alleged injury to the victim. (Supp. Br. 10; Vacate Aff. at 6). He contends that counsel should have investigated the victim's alleged injuries as well as investigated "the good samaritan" who supposedly witnessed the crime and who, according to Harris, would have corroborated his assertion that he never touched the victim. (Pet'r's Reply Br. at 6; Supp. Br. at 10). We conclude that petitioner waived this claim by pleading guilty, and furthermore, that counsel's investigation decisions did not constitute ineffective assistance.

27

As a threshold issue, petitioner has waived this claim. The Supreme Court has held that after a defendant "has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." Tollett, 411 U.S at 267. The complaint about the investigation that should have taken place before petitioner pled guilty was, thus, waived at the moment that petitioner entered his plea.

We also find petitioner's claim to be meritless. Thus, even if petitioner had not waived this claim, it would fail. An attorney's decision as to how to prepare for trial, including pre-trial investigation, is treated with the same level of deference as counsel's judgments more generally. See Strickland, 466 U.S. at 690-91. While "counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary . . . a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." Id. at 691. Moreover, the Supreme Court has stated that, "[b]eyond the general requirement of reasonableness, 'specific guidelines are not appropriate'" and in fact "Strickland

28

itself rejected the notion that the same investigation will be required in every case." Cullen v. Pinholster, 131 S.Ct. 1388, 1406-07 (2011); see also Strickland, 466 U.S. at 688-89. Furthermore, "[t]here comes a point where a defense attorney will reasonably decide that another strategy is in order, thus 'ma[king] particular investigations unnecessary.'" Pinholster, 131 S.Ct. at 1407 (quoting Strickland, 466 U.S. at 691); see also Batchilly v. Nance, 2010 WL 1253921, at *36 (Apr. 2, 2010), adopted, 2011 WL 1226260 (S.D.N.Y. Mar. 30, 2011).

Additionally, the reasonableness of counsel's decisions must be assessed in light of "the facts of a particular case, viewed as of the time of counsel's conduct," and for this reason, "inquiry into counsel's conversations with the defendant may be critical." Strickland, 466 U.S. at 690, 691. While petitioner alleged in his motion papers that an eyewitness -- whom he referred to as the "good samaritan" -- would have corroborated petitioner's claim that he engaged only in "jostling," he never indicated that he had discussed this avenue of defense with his counsel. (See Vacate Aff. at 6; see also Supp. Br. at 10). Indeed, petitioner never asserts that he explicitly told counsel about this potential witness, but rather engages in conclusory speculation as to what his attorney would have learned had he investigated the witness. (See Supp. Br.

29

at 10). In any event, petitioner's possible failure to fully inform his counsel about the facts might explain why counsel did not investigate the purported eyewitness.

Furthermore, there is no support for petitioner's claim that the eyewitness would have corroborated his story. As to the pivotal issue -- whether petitioner did or did not use force in stealing the victim's money -- there is no reason to believe that the unidentified eyewitness would have been able to conclusively state that Harris did not touch the victim, and petitioner offers no concrete evidence that the unidentified witness would have corroborated his story.

Harris's argument about investigating the victim's injuries fails for similar reasons. First, he does not establish that his attorney did not seek to interview her. Second, he offers no basis to infer that, had counsel interviewed her, any exculpatory evidence would have been generated. Third, he ignores his own allegation that the prosecutor suggested that the victim was prepared to testify as to her injury and that her finger was still visibly injured. (See Vacate Aff. at 6).

Thus, petitioner cannot prove that there is a strong

probability that, but for counsel's decision not to investigate or interview either of these eyewitnesses, the result of the proceeding would have been different. See Strickland, 466 U.S. at 694.

In sum, petitioner's Sixth Amendment claim based on an allegedly inadequate pretrial investigation must fail. A defendant who is unable to show "that the advice he received from counsel was not within [acceptable] standards," Tollett, 411 U.S. at 267, cannot otherwise "assert independent claims relating to [the deprivation of constitutional rights that occurred] prior to the entry of a guilty plea." United States v. Coffin, 76 F.3d 494, 497 (2d Cir. 1996). The extent of counsel's investigation does not make the plea any more or less voluntary and thus the claim is baseless. See, e.g., United States v. Torres, 129 F.3d 710, 715 (2d Cir. 1997) (rejecting defendant's claim of ineffective assistance of counsel based on his attorney's failure to call certain witnesses at a pretrial suppression hearing because that claim was based on events that occurred prior to the entry of the guilty plea). In any event, for reasons noted, petitioner fails to demonstrate either that his attorney performed inadequately in investigating the case or that any such inadequacy prejudiced him.

31

iii. <u>Counsel's Failure to File a Motion</u>

Petitioner also complained to the state courts that his counsel had failed to file an omnibus motion, although he does not articulate what the basis for such a motion would have been. (Supp. Br. at 18; Vacate Aff. at 6). This claim is meritless.

"The failure to file a suppression motion does not constitute per se ineffective assistance of counsel," <u>Kimmelman v. Morrison</u>, 477 U.S. 365, 384 (1986), and presumably the same principle applies to other pretrial motions. The federal courts are "reluctant to second guess matters of trial strategy" and "courts must allow trial counsel some latitude in deciding which pretrial motions are called for in a given case." <u>United States v. Aulet</u>, 618 F.2d 182, 189 (2d Cir. 1980) (citing <u>inter alia</u> <u>United States ex rel. Cruz v. LaVallee</u>, 448 F.2d 671, 679 (2d Cir. 1971), which held that "[a] lawyer must be able to determine questions of strategy during trial")). It is true that "[t]he failure to file a timely pretrial motion can amount to deficient attorney performance, but the defendant must show . . . that there was actual prejudice." <u>United States v. Clement-Shenandoah</u>, 183 Fed. App'x 87, 90 (2d Cir. 2006) (citing <u>Laaman v. United States</u>, 973 F.2d 107, 113 (2d Cir. 1992)).

As a preliminary matter, for reasons already noted, petitioner has waived this claim by virtue of his guilty plea. See, e.g., Tollet, 411 U.S. at 267; see also supra p. 28.

In any event, petitioner fails to show that there was a Sixth Amendment violation. Taking into account the plea negotiations, it was reasonable for the Appellate Division to conclude that counsel made a strategic and professionally informed decision to pursue a plea offer rather than file a motion. On July 22, 2009 the case was adjourned to August 19, 2009 for motion practice, but petitioner contacted his attorney on July 24, 2009 to say that he wanted to take the proffered plea deal by pleading guilty to Robbery in the Third Degree. (See People's Resp. ¶¶ 7-8; see also Plea Mins. 2). There is no evidence to suggest that counsel would not have filed the appropriate motions at the appropriate time had Harris not chosen to plead guilty. To the contrary, counsel confirmed at the August 3, 2009 plea allocution that "The District Attorney's Office has allowed [petitioner] to take [the] offer" and "that is why the Court has not received any motions from me." (Plea Mins. at 2). Moreover, the filing of a motion by counsel while knowing that petitioner planned to plead guilty might have endangered the plea offer from the prosecution.

33

Furthermore, we cannot say that the decision to pursue a plea rather than filing motions (the nature of which Harris does not clearly identify) resulted in any prejudice to petitioner. See, e.g., Clement-Shenandoah, 183 Fed. App'x at 90. Petitioner makes no showing that the motion that he claims counsel should have made would have been successful. See Moye v. Corcoran, 668 F. Supp.2d 523, 541 (W.D.N.Y. 2009) (rejecting defendant's claim of ineffective assistance based on counsel's failure to file a motion challenging the racial composition of the prospective jury because defendant had not "made a sufficient showing to warrant relief on such a motion"). Moreover, by pursuing the plea negotiations, counsel obtained a favorable plea agreement for Harris, earning him a sentence of three and one-half to seven years and the status of a second-felony offender. If Harris had been convicted at trial and adjudicated a persistent-felony offender based on his previous two felony convictions (see Parole Bd. Release Notice; People's Resp. ¶ 15 n.1; Supp. Br. at 25), he would have been exposed to a potential sentence of twenty-five years to life. See N.Y. Penal Law §§ 70.10 & 70.00 (2)(a), (3)(a)(i).

#### iv. Counsel's "Threat" of Losing at Trial

Petitioner claims that his counsel threatened that he would

34

lose at trial, a threat that "induced" his guilty plea. (Supp. Br. at 13; Vacate Aff. at 7). We conclude that counsel's alleged statement that petitioner would lose at trial does not constitute deficient performance and did not prejudice petitioner.

What petitioner refers to as a "threat" is more adequately described as advice. The statement was entirely appropriate; it is part of a trial lawyer's responsibilities as a competent attorney to help his client weigh the realistic prospects if he went to trial. Petitioner's allegation is insufficient to meet his substantial burden to show that his attorney's advice or recommendation fell below "an objective standard of reasonableness." Strickland, at 688; see also Savinon v. Sears, 2011 WL 6979974, *7-9 (Dec. 8, 2011), adopted, 2012 WL 77848 (S.D.N.Y. Jan. 10, 2012) (rejecting defendant's argument that he was pressured into taking a guilty plea because his attorney told him he was going to lose at trial).

Petitioner asserts that on the day of grand jury action, the prosecutor told his counsel that the victim was present in the courtroom with an injured finger and was prepared to testify before the grand jury. (See Vacate Aff. at 6). Moreover, the prosecution made clear that if Harris did not prevail at trial, given his

35

criminal record as a second-felony offender, he would be facing a potential minimum sentence of sixteen years to life. (See People's Resp. ¶ 4). Based on the circumstances, "this Court should not second-guess counsel's analysis of [p]etitioner's chances of success at trial, or counsel's purported urging of [p]etitioner to accept the plea bargain." Savinon, 2011 WL 6979974, at *9 (citing Premo, 131 S.Ct. at 742). While counsel's advice was presumably not what petitioner wanted to hear, it was certainly within the "wide range of professionally competent assistance" and does not justify a claim for ineffective assistance of counsel. Strickland, 466 U.S. at 690.

Although petitioner attempts to undermine the validity of his plea by contending that counsel's statement "induced" his guilty plea (Supp. Br. at 13), any advice about the likelihood of prevailing at trial is an important part of the decision-making process related to a plea offer. Cf. Savinon, 2011 WL 6979974, at *9. Considering all of the evidence and the lack of merit to petitioner's claims, counsel's advice was reasonable; indeed, the plea bargain that counsel negotiated appears to have been quite favorable to petitioner.

In sum, petitioner fails to demonstrate that his counsel acted

36

unreasonably or that he was prejudiced by his attorney's conduct in any respect. Necessarily, then, the state court's rejection of his claim for ineffective assistance of counsel was neither contrary to, nor based on an unreasonable application of, established Supreme Court precedent.

B.    The Guilty Plea

Petitioner contends that his plea was "involuntarily and unintelligently entered as the direct result of coercion, duress and . . . the ineffective assistance of counsel" (Pet'r's Reply Br. at 5), particularly with regard to his waiver of the right to appeal his conviction. (Supp. Br. at 14). This claims is groundless.

1. Voluntariness of the Guilty Plea Generally

i. Legal Standard

The Fifth Amendment privilege against compulsory self-incrimination, made applicable to the states by the Fourteenth Amendment, requires that the entry of a guilty plea "'represent[] a voluntary and intelligent choice among the alternative courses of

37

action open to the defendant.'" <u>Urena v. New York</u>, 160 F. Supp.2d 606, 610 (S.D.N.Y. 2001) (quoting <u>Ventura v. Meachum</u>, 957 F.2d 1048, 1058 (2d Cir. 1992)); <u>see</u>, <u>e.g.</u>, <u>Boykin v. Alabama</u>, 395 U.S. 238, 242-43 (1969). To be enforceable, "[w]aivers of constitutional rights not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences." <u>Brady v. United States</u>, 397 U.S. 742, 748 (1970); <u>see</u> <u>Bradshaw v. Stumpf</u>, 545 U.S. 175, 183 (2005); <u>see also</u> <u>United States v. Ready</u>, 82 F.3d 551, 556 (2d Cir. 1996).

A waiver is considered knowing or "informed" if the defendant "fully understood the consequences of the waiver." <u>Ready</u>, 82 F.3d at 557 (citing <u>inter alia</u> <u>United States v. Rutan</u>, 956 F.2d 827, 830 (8th Cir. 1992) (internal quotations omitted)); <u>see</u> <u>United States v. Pearson</u>, 570 F.3d 480, 485 (2d Cir. 2009) (<u>per</u> <u>curiam</u>); <u>see also</u> <u>United States v. Rogue</u>, 421 F.3d 118, 122 (2d Cir. 2005). To be voluntary, a plea may not be the result of "actual or threatened physical harm, mental coercion overbearing the defendant's will, or the defendant's sheer inability to weigh his options rationally." <u>Miller v. Angliker</u>, 848 F.2d 1312, 1320 (2d Cir. 1988); <u>see</u> <u>also</u> <u>United States v. Doe</u>, 537 F.3d 204, 211 (2d Cir. 2008); <u>United States v. Millan-Colon</u>, 829 F. Supp. 620, 635 (S.D.N.Y. 1993), <u>aff'd</u>, 17 F.3d 14 (2d Cir. 1994); <u>Heron v. New York</u>, 1999 WL

1125059, *5 (S.D.N.Y Dec. 8, 1999). A plea may not be induced by "threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business." Doe, 537 F.3d at 211; see also Bousley v. United States, 523 U.S. 614, 619 (1998) (quoting Brady, 397 U.S. at 744).

### ii. Analysis

We find, upon review of the record -- including the transcripts of petitioner's allocution and sentencing -- that Harris knowingly and voluntarily entered his guilty plea.

At his plea hearing, petitioner informed the court that he had discussed the plea agreement with counsel, that he was satisfied with his attorney, and that he had signed the agreement with an understanding of its terms. (See Plea Mins. at 6-7). Courts give great deference to such statements made by a defendant during a plea hearing. See, e.g., United States v. Monzon, 359 F.3d 110, 115-16 (2d Cir. 2004). It is clear that petitioner gave thorough consideration to his decision, as he contemplated the guilty plea for five days and contacted his attorney because he "could not

39

concentrate" on anything other than making the decision. (Vacate
Aff. at 7). It is also evident that petitioner contemplated his
options and made a voluntary choice. Indeed, as his counsel stated
to the court at the plea proceeding, the "case had been on a couple
of weeks ago" but "Mr. Harris need[ed] a little more time to
consider the offer." (Plea Mins. at 2). Because petitioner chose to
accept the offer and plead guilty to Robbery in the Third Degree,
counsel contacted the clerk to advance the case. (Id.).

At the allocution, petitioner stated that he understood that
the court would impose an indeterminate sentence of three and one-
half to seven years in prison. (Id. at 3-4). He confirmed his
understanding of the rights that he was surrendering by pleading
guilty, including the right to plead not guilty, the right not to
answer questions about the case, the right to a trial by jury and
the accompanying rights to call witnesses and testify on his own
behalf. (Id. at 4-6). He also admitted his guilt on the charge that
he had forcibly stolen property from another person on April 4,
2009. (Id. at 3).[5]

Given these representations, the record reflects, as the
Appellate Division implicitly found, that his plea was voluntary

---

[5] We note that the actual date of the incident was April 24,
2009, not April 4. (See Vacate Aff. at 1; People's Resp. ¶ 3).

and knowing. In addition, to the extent that Harris seeks to set aside the plea by now contending that he had committed only a jostling rather than a forcible stealing, he knowingly surrendered this argument by pleading guilty.

## 2. <u>Voluntariness of Waiver of Right to Appeal</u>

In arguing that his plea should have been vacated, Harris particularly focuses on the agreed-to waiver of his right to appeal. This argument is meritless.

### i. <u>Legal Standard</u>

It is beyond dispute that "[t]he right to appeal may be waived as part of a plea agreement." <u>United States v. Chen</u>, 127 F.3d 286, 289 (2d Cir. 1997) (citing <u>United States v. Yemitan</u>, 70 F.3d 746, 747 (2d. Cir. 1995)). "A defendant who knowingly and voluntarily enters into a plea agreement containing a waiver of appeal rights and obtains the benefits of such an agreement is bound by the waiver provision." <u>United States v. Difeaux</u>, 163 F.3d 725, 728 (2d Cir. 1998) (citing <u>United States v. Salcido-Contreras</u>, 990 F.2d 51, 53 (2d Cir. 1993)); see <u>Garcia-Santos v. United States</u>, 273 F.3d 506, 508 (2d Cir. 2001) (<u>per</u> <u>curiam</u>); see also <u>United States v.</u>

<u>Gomez-Perez</u>, 215 F.3d 315, 318 (2d Cir. 2000); <u>Moreta v. United</u> <u>States</u>, 604 F. Supp.2d 610, 611 (S.D.N.Y. 2009).

However, "a waiver of the right to appeal should only be enforced by an appellate court if the record clearly demonstrates that the waiver was both knowing (in the sense that the defendant fully understood the potential consequences of the waiver) and voluntary." <u>Ready</u>, 82 F.3d at 557 (quoting <u>United States v.</u> <u>Schmidt</u>, 47 F.3d 188, 190 (7th Cir. 1995) (internal quotations omitted)). In addition, it is crucial that "the defendant underst[and] that the right to appeal is separate and distinct from those rights automatically forfeited upon a plea of guilty." <u>Nicholas v. Smith</u>, 329 Fed. App'x 313, 316 (2d Cir. 2009) (quoting <u>People v. Lopez</u>, 6 N.Y.3d 248, 256, 811 N.Y.S.2d 623, 627 (2006)).

In determining whether the waiver of appeal was valid, the reviewing court must consider all relevant factors to "properly determine whether a rational defendant would have desired an appeal or that the particular defendant sufficiently demonstrated to counsel an interest in an appeal." <u>Roe v. Flores-Ortega</u>, 528 U.S. 470, 480 (2000). This assessment includes such factors as "whether the defendant received the sentence bargained for as part of the plea and whether the plea expressly reserved or waived some or all

42

appeal rights." Id.

Even if the defendant voluntarily and knowingly agrees to waive his right to appeal or otherwise challenge his conviction, enforcement of such a waiver is not without exceptions. In particular, there is an exception for plea agreements that are entered into without the effective assistance of counsel. United States v. Hernandez, 242 F.3d 110, 113-14 (2d Cir. 2001) (per curiam). "[A] plea agreement containing a waiver of the right to appeal is not enforceable where the defendant claims [and demonstrates] that the plea agreement was entered into without effective assistance of counsel." Id. at 113-14; see Campusano v. United States, 442 F.3d 770, 777 (2d Cir. 2006) (waiver of the right to appeal does not function as a waiver of the right to effective assistance); see also United States v. Rosa, 123 F.3d 94, 98 (2d Cir. 1997) (defendant retains the right to appeal on the grounds of ineffective assistance, despite the existence of a plea agreement including a waiver of appeal); cf. United States v. Cano, 494 F. Supp.2d 243, 248 (S.D.N.Y. 2007) (ineffective-assistance claims pertaining to § 2255 waivers will only succeed "when the claim relates to the negotiation and entry of a plea or sentencing agreement"). Thus, a claim of ineffective assistance in connection with the decision to enter a plea must be assessed on its merits as

43

a predicate to determining whether the defendant has effectively waived whatever rights he surrendered by way of his plea.

## ii. Analysis

Harris contends that "[he] was never informed of having to waive his right to appeal the sentence as harsh and excessive." (Supp. Br. at 14). The record, however, reflects that he knowingly and voluntarily waived his right to appeal.

To the extent that Harris objects to the purported waiver of his right to appeal his sentence, his argument is wide of the mark. The waiver did not preclude him from challenging his post-plea sentence, and the Appellate Division considered and rejected that claim. See Harris, 80 A.D.3d at 533, 914 N.Y.S.2d at 894.

As for petitioner's waiver of his right to appeal any other issues, the record illustrates that the trial court explained to Harris that he was giving up his right to appeal the conviction to a higher court. (See Plea Mins. at 8). Although petitioner initially indicated that he did not understand this, after consulting with his counsel, he affirmed that he understood and then signed the Appeal Waiver Form. (Id.). His counsel again

44

confirmed that Harris had waived his right to appeal at the sentencing hearing on August 19, 2009, sixteen days after the plea proceeding. (Sent. Mins. at 2).

The record, contrary to petitioner's statement in his pro se brief, is not "silent as to whether the appellant understood the implications of the waiver." (Supp. Br. at 17). Based on petitioner's affirmation that, after consulting with his counsel, he understood that he would be giving up his right to appeal by accepting the plea offer, there is no reason to believe that petitioner's waiver was involuntary or unknowing. The record establishes "that the defendant understood that the right to appeal is separate and distinct from those rights automatically forfeited upon a plea of guilty", because the court described the right to appeal to petitioner separately from its description of the rights that accompany a jury trial. Lopez, 6 N.Y.3d at 256, 811 N.Y.S.2d at 844. Specifically, the court stated,

> One of the rights, Mr. Harris, that a person has after being convicted after trial or even after a guilty plea is the right to appeal the conviction to a higher court. By accepting this disposition . . . you give up that right to appeal.

(Plea Mins. at 8). Compare Lopez, 6 N.Y.3d at 256-57, 811 N.Y.S.2d at 627-28 (reversing a conviction because the defendant's appeal

45

waiver was invalid). The written waiver signed by petitioner
further demonstrates that the waiver of appeal was presented to
petitioner differently from the other rights waived by the guilty
plea.

As for the analysis outlined by Roe v. Flores-Ortega, we note
that there is no evidence that petitioner ever expressed to his
counsel an interest in an appeal before he pled. 528 U.S. at 480.
Moreover, he received exactly the sentence for which he had
bargained. Accordingly, there was no reasoned basis to appeal the
sentence. Harris pled guilty, waived his appellate rights and
received the stipulated sentence. Furthermore, it is clear that
counsel did not act unreasonably in encouraging petitioner to
accept the plea bargain containing a waiver of the right to appeal.
Moreover, as the Court observed in Flores-Ortega, absent an
instruction by the defendant to his attorney to file a notice of
appeal, he cannot prevail on a Sixth Amendment claim of this sort
without showing a specific form of prejudice -- that is, by showing
that he would have elected to appeal had he been consulted by
counsel. Id. at 484. Harris fails to demonstrate such prejudice.

In any event, for reasons already noted, petitioner's counsel
performed competently. The "induce[ment]" that petitioner alleges

46

he experienced by counsel "threat[ening]" (Supp. Br. at 13) that he would lose at trial is certainly not the kind of mental coercion that would make a plea involuntary. To the contrary, the advice offered by counsel assisted petitioner in his ability to comprehensively weigh his options and make the well-advised decision to accept the plea bargain.

In sum, the conclusion of the Appellate Division that Harris's plea was voluntary and knowing was not inconsistent with, and did not unreasonably apply, Supreme Court precedent, nor did it rest on an unreasonable interpretation of the factual record.

## C.   Insufficient Evidence before the Grand Jury

Petitioner next avers that the evidence before the grand jury was insufficient to support the charges of second- and third-degree robbery. We conclude that petitioner waived his claim by pleading guilty. Moreover, even absent such a plea, the claim is not cognizable on federal habeas review.

### 1. Waiver of the Claim

Petitioner waived any claims about the grand jury when he pled

47

guilty to third-degree robbery, and, in doing so, affirmed the prosecution's version of the facts. See Tollett, 411 U.S. at 267; accord, e.g., People v. Thomas, 53 N.Y.2d 338, 344-45, 441 N.Y.S.2d 650, 653 (1981) (holding that "to save . . . for appellate review an insufficient evidence claim following a plea of guilty would turn the 'solemn act' of pleading guilty into a mere device for maintaining innocence while avoiding trial") (quoting Tollet, 411 U.S. at 267).

### 2. The Grand Jury Claim is not Cognizable on Habeas Review

In any event, Harris's claim about the weight of the evidence before the grand jury is precluded from habeas review. Because a state prisoner must allege that his conviction violated the Constitution, laws or treaties of the United States, trial or appellate errors of state law do not trigger federal habeas relief. See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); Lewis v. Jeffers, 497 U.S. 764, 780 (1990).

Petitioner does allege that his conviction violated the Fifth, Sixth and Fourteenth Amendments. (See Pet. 5A; Pet'r's Reply Br. at 6). However, he challenges the Appellate Division's decision to uphold his grand jury indictment despite what he claims was

48

insufficient evidence to support his indictment on a charge of second-degree robbery. The question of sufficiency of evidence is one of state law and, as articulated by the Supreme Court in Costello v. United States, "neither the Fifth Amendment nor any other constitutional provision prescribes the kind of evidence upon which grand juries must act." 350 U.S. 359, 362 (1956). Furthermore, the Fifth Amendment right to indictment by a grand jury has not been incorporated against the states by the Due Process Clause of the Fourteenth Amendment. See LanFranco v. Murray, 313 F.3d 112, 118 (2d Cir. 2002) (citing Branzburg v. Hayes, 408 U.S. 665, 688 n.25 (1972) (citing Hurtado v. California, 110 U.S. 516, 534-35 (1884)); Fields v. Soloff, 920 F.2d 1114, 1118 (2d Cir. 1990)). Consequently, states are free to require grand jury indictments as they see fit, or not at all. See Fields, 920 F.2d at 1118.

While New York's constitution creates a right to indictment by a grand jury for felony charges, state law governs how these proceedings are to be conducted and creates the remedies for any procedural violations. Thus, any alleged impropriety in petitioner's grand-jury proceeding arises out of state law and cannot form the basis for federal habeas relief. See, e.g., Hutchings v. Herbert, 260 F. Supp.2d 571, 577 (W.D.N.Y. 2003)

49

(holding that petitioner's grand jury claim was purely a matter of state law and thus did not present a cognizable federal habeas claim); Gibbs v. New York, 2002 WL 31812682, *4 (S.D.N.Y. Dec. 12, 2002) (same).

We therefore find that petitioner waived his claim of insufficient evidence before the grand jury when he pled guilty, and that, in any event, the claim is not cognizable on habeas review.

D.   Petitioner's Sentence

Petitioner asserts that his sentence constitutes cruel and unusual punishment under the Eighth Amendment. (Pet. 5A). The Appellate Division rejected the claim on the merits, Harris, 80 A.D.3d at 534, 914 N.Y.S.2d at 894, and we agree with that decision.

1. Legal Standard

The length of a state defendant's sentence, if within statutory limits, is not ordinarily a matter of constitutional significance. See, e.g., White v. Keane, 969 F.2d 1381, 1383 (2d

Cir. 1992) (per curiam). Constitutional review of state sentencing decisions is generally limited to whether the sentence exceeded the statutory maximum, see, e.g., Jones v. Thomas, 491 U.S. 376, 381 (1989); whether the sentencing court relied upon constitutionally impermissible considerations, see, e.g., Alabama v. Smith, 490 U.S. 794, 798-800 (1989); Texas v. McCullough, 475 U.S. 134, 141-44 (1986); whether it relied upon materially incorrect information, see, e.g., Townsend v. Burke, 334 U.S. 736, 740-41 (1948); United States v. Malcolm, 432 F.2d 809, 815-16 (2d Cir. 1970); and whether the sentence violated the Ex Post Facto or Double Jeopardy clauses. See, e.g., Miller v. Florida, 482 U.S. 423, 431-33 (1987), abrogated on other grounds, Johnson v. United States, 529 U.S. 694 (2000); United States v. Meeks, 25 F.3d 1117, 1120 (2d Cir. 1994); Stewart v. Scully, 925 F.2d 58, 62 (2d Cir. 1991). The habeas court may also review whether a state sentence was "constitutionally disproportionate" in view of the facts of the case, but relief based on such a claim is "exceedingly rare" in non-capital cases. See, e.g., Ewing v. California, 538 U.S. 11, 21 (2003) (O'Connor, J.) (quoting Rummel v. Estelle, 445 U.S. 263, 272 (1980)); Harmelin v. Michigan, 501 U.S. 957, 966 (1991) (Scalia, J.); Bethea v. Scully, 834 F.2d 257, 261 (2d Cir. 1987) (quoting United States v. Ortiz, 742 F.2d 712, 714 (2d Cir. 1984) (quoting Solem v. Helm, 463 U.S. 277, 290 n.16 (1983))).

2. Analysis


Petitioner received a sentence that was plainly within the state statutory range and has made no showing that his sentence of three and one-half to seven years was "constitutionally disproportionate" in light of the facts of the case. As a second-felony offender[6] who committed a Class D felony, under New York's sentencing scheme he was eligible to receive a sentence ranging from a minimum of two years to four years, to a maximum of three and one-half to seven years. N.Y. Penal Law §§ 70.06(3)(d), (4)(b). Petitioner makes reference to the fact that his sentence in this case is "to run consecutive to 2 years and 11 months of an undischarged prison term." (Supp. Br. at 21; see also Pet'r's Reply Br. at 7). We infer that petitioner is arguing that his sentences should run concurrently, as opposed to consecutively. However, petitioner's unserved time from a prior sentence is not at issue here.[7]

_____

[6] At his allocution, the court deemed Harris only a second-felony offender, but, given the record before us, including the prosecutor's response to petitioner's 440.10 motion, his pro se supplemental brief and the June 20, 2012 Parole Board Release Decision Notice, it is evident that Harris has a criminal record of at least two previous felony convictions and could thus have been charged as a persistent felony offender. See N.Y. Penal Law §§ 70.10 & 70.00 (2)(a), (3)(a)(i); see also People's Resp. ¶ 15 n.1; Supp. Br. at 25; Parole Bd. Release Decision Notice.
[7] Petitioner also seeks to supplement his claim for cruel and unusual punishment with a letter to the court dated June 25, 2012, which attaches the Parole Board Release Decision Notice

The reasoning of the sentencing court, endorsed by the Appellate Division, was entirely consistent with Supreme Court precedent. Therefore, petitioner is not entitled to habeas relief on this claim.


                          CONCLUSION


     For the foregoing reasons, we recommend that the writ be denied and the petition dismissed with prejudice. We further recommend that a certificate of appealability not issue since petition fails to present any issue worthy of appellate review.


     Pursuant to Rule 72 of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from this date to file

---

dated June 20, 2012 denying Harris parole. (See Pet'r's Letter to the Court dated June 25, 2012). The decision of the Parole Board does not affect our analysis of petitioner's Eighth Amendment claim because the pertinent punishment, for Eighth Amendment purposes, is the prison sentence imposed by the court. See e.g., Wilson v. Seiter, 501 U.S. 294, 300 (1991) (finding that excessive punishment must be imposed by the statute or the sentencing judge, otherwise some mental element must be attributed to the inflicting officer). In any event, if petitioner had some conceivable basis for a separate federal claim based on the denial of state parole, he would be required to exhaust his state remedies before resorting to federal court. See 28 U.S.C. § 2254(b)(1); See, e.g., Gray v. Netherland, 518 U.S. 152, 161 (1996); Rose v. Lundy, 455 U.S. 509, 510 (1982). Finally, petitioner does not allege a right to discharge because, as of the date of the Parole Board decision on June 20, 2012, petitioner had served only 30 months of his 42-84 month sentence. (See Parole Bd. Release Decision Notice).

written objections to this Report and Recommendation. Such objections shall be filed with the Clerk of the Court and served on all adversaries, with extra copies to be delivered to the chambers of the Honorable Ronnie Abrams, Room 620, 500 Pearl Street, New York, New York 10007, and to the chambers of undersigned, Room 1670, 500 Pearl Street, New York, New York, 10007. Failure to file timely objections may constitute a waiver of those objections both in the District Court and on later appeal to the United States Court of Appeals. See Thomas v. Arn, 474 U.S. 140, 150 (1985); Small v. Sec'y of Health & Human Servs., 892 F.2d 15, 16 (2d Cir. 1989); 28 U.S.C. § 636 (b) (1); Fed. R. Civ. P. 72, 6(a), 6(d).


DATED: New York, New York
       August 8, 2012

                         RESPECTFULLY SUBMITTED,


                         MICHAEL H. DOLINGER
                         UNITED STATES MAGISTRATE JUDGE


54